# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

| | |
|---|---|
| ALBERT CROCKER,<br><br>        Plaintiff,<br>vs.<br><br>EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and KIA MOTORS FINANCE COMPANY,<br><br>        Defendants. | Civil Action No.:<br><br>COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Albert Crocker ("Plaintiff") brings this action against defendants Equifax Information Services, LLC ("Equifax"), Trans Union, LLC ("TransUnion"), Experian Information Solutions, Inc., ("Experian") (collectively, "CRA Defendant"), and Kia Motors Finance Company ("Kia") (all defendants collectively, "Defendants"), and alleges, based upon the personal knowledge of Plaintiff, the investigation of counsel, and upon information and belief, as follows:

## NATURE OF THE ACTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. (the "FCRA"). Defendants have been reporting inaccurate information about Plaintiff's Kia account. Specifically, while the Kia account remains open and in good standing, Defendants reported that the account was closed and the underlying vehicle was repossessed. Although Plaintiff disputed the reporting in writing, Defendants failed to correct the reporting. Plaintiff later was denied multiple extensions of credit based on the misleading information reported by Defendants and has been forced to deal with aggravation and humiliation of a poor credit score. Accordingly, Plaintiff is entitled to damages.

2. In or around September 2018, Plaintiff leased a vehicle from Defendant Kia. The lease obligated Plaintiff to pay Kia monthly installments in the approximate amount of $245 dollars, for a period of 36 months. Plaintiff diligently paid those installments month after month. In or around August 2020, Plaintiff discovered that CRA Defendant were inaccurately reporting his Account Status as Closed with an inaccurately high current balance of $1,300 to $1,500 dollars. Worse still, CRA Defendants reported Plaintiff's Kia account or payment status as "in repossession," or "repossession." All the while, Plaintiff continued to make timely monthly payments to Kia.

3. Plaintiff took affirmative steps to rectify the situation by complying with FCRA procedures intended to protect the integrity and accuracy of Plaintiff's credit and financial status.

Specifically, Plaintiff submitted written disputes to the three national credit reporting agencies, CRA Defendants, disputing the high balance on the Kia account and the purported repossession.

4. The receipt of these dispute letters triggered CRA Defendant's statutory obligations to conduct an investigation and mark the account as disputed.

5. Nevertheless, Defendants failed to conduct an investigation and refused to mark the Kia account as disputed. Defendants thus violated their FCRA obligations and continued to harm Plaintiff by reporting false and inaccurate information.

6. Based on these factual allegations, Plaintiff asserts that CRA Defendants violated two different provisions of the FCRA:

- In violation of 15 U.S.C. §1681e(b), CRA Defendants failed to devise and implement reasonable procedures to ensure the "maximum possible accuracy" of the information reported in Plaintiff's credit reports.

- In violation of 15 U.S.C. §1681i, CRA Defendants failed to conduct a reasonable investigation after receiving Plaintiff's dispute letter.

7. Plaintiff further alleges that Defendant Kia violated §1681s-2(b)(1) by failing to fully and properly investigate Plaintiff's dispute after receiving notification thereof from the credit bureaus.

8. Plaintiff brings this action to recover, *inter alia*, statutory damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and expenses for injuries suffered as a result of Defendants' misconduct. Defendants' erroneous reporting of inaccurate information in Plaintiff's consumer background reports continues to affect Plaintiff's creditworthiness and credit score. As a result of Defendants' misconduct, Plaintiff has suffered a decreased credit score, the

loss of ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of erroneous credit reports.

## JURISDICTION AND VENUE

9. The claims asserted in this complaint arise under 15 U.S.C. §§1681e, 1681i, and 1681s-2(b) of the FCRA. Jurisdiction is proper under 28 U.S.C. §1331 and 15 U.S.C. §1681p.

10. Venue is proper under 28 U.S.C. §1391(b)(2) since a material portion of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

11. Plaintiff resides in Lee County, Florida, and qualifies as a "consumer" as defined and protected by the FCRA.

12. Defendant Equifax is a foreign corporation that regularly conducts business in this District. Equifax qualifies as a "consumer reporting agency" under the FCRA.

13. Defendant TransUnion is a foreign corporation that regularly conducts business in this District. TransUnion qualifies as a "consumer reporting agency" under the FCRA.

14. Defendant Experian is a foreign corporation that regularly conducts business in this District. TransUnion qualifies as a "consumer reporting agency" under the FCRA.

15. Defendant Kia is a foreign corporation that regularly conducts business in this judicial district and qualifies as a "furnisher" of credit information under the FCRA.

## SUBSTANTIVE ALLEGATIONS

**Plaintiff Learns That His Vehicle is "Repossessed"**

16. In or around September 2018, Plaintiff leased a vehicle from Defendant Kia. The lease obligated Plaintiff to pay Kia the approximate amount of $245 dollars each month for a period of three years. Plaintiff diligently paid those installments month after month. In or around

August 2020, Plaintiff discovered that CRA Defendants were inaccurately reporting his Kia account in multiple ways that reflect negatively on Plaintiff's credit.

17.     Most notably, CRA Defendants inaccurately reported that Plaintiff's vehicle was repossessed. In fact, Plaintiff's vehicle was never repossessed, and on January 13, 2021, Plaintiff obtained title of his vehicle, successfully purchasing it from Kia, the vehicle's lessor.

**Equifax's Inaccuracy**

18.     Specifically as to Equifax, in or around August 17, 2020 Plaintiff sent a dispute letter to Equifax disputing the high balance on the Kia account and the purported repossession.

19.     Plaintiff's dispute letter stated specifically that "the vehicle was never repossessed." Enclosed with the dispute letter was a copy of Plaintiff's complete car payment history as supplied by Kia and obtained from Kia's website. The Kia payment history showed Plaintiff had timely paid each and every monthly payment.Equifax, by letter dated September 21, 2020, advised that the "results of the dispute . . . are complete" and that it had made all changes that it can in light of Plaintiff's dispute.

20.     Nevertheless, Equifax continued to report the Kia account as "closed" with a "Balance" of $1,573 (over six times the installment payment amount). Further, the "Account Status" stated simply, "REPOSSESSION."

21.     All of these are obvious inaccuracies: (1) the account was open and in good standing, not closed as reported; (2) Plaintiff's balance should have reflected the installment amount, if anything at all; and (3) Plaintiff's vehicle was never repossessed.

22.     Moreover, Equifax's report is internally inconsistent. Equifax's report on September 15, 2020 displays a payment "grid" showing on-time monthly payments for the Kia

account up to and including August 2020. Therefore, Plaintiff's account could not have accumulated a balance of $1,573 in under two months' time.

23. In spite of Plaintiff's dispute letter, Equifax also failed to mark the Kia account or the repossession as disputed.

24. Plaintiff later applied for credit from Solar Mosaic, Inc. By letter dated January 28, 2021, Solar Mosaic, Inc. denied Plaintiff's application based on information contained in an Equifax credit report. In particular, the denial referenced a "serious delinquency" on Plaintiff's Equifax credit report.

**TransUnion's Inaccuracy**

25. Specifically as to TransUnion, in or around August 17, 2020 Plaintiff sent a dispute letter to TransUnion disputing the high balance on the Kia account and the purported repossession.

26. Plaintiff's dispute letter stated specifically that "the vehicle was never repossessed." Enclosed with the dispute letter was a copy of Plaintiff's complete car payment history as supplied by Kia and obtained from Kia's website. The Kia payment history showed Plaintiff had timely paid each and every monthly payment.

27. After receiving Plaintiff's dispute letter, TransUnion continued to report the Kia account as "closed" on July 31, 2019, with a "Balance" of $1,357 (over five times the installment payment amount). Further, the Account Status was marked "Derogatory," the "Remarks" field contained "Repossession," and the "Current Payment Status" stated simply, "In Repossession."

28. All of these are obvious inaccuracies: (1) the account was open and in good standing, not closed, as reported; (2) Plaintiff's balance should have reflected the installment amount, if at all; and (3) Plaintiff's vehicle was never repossessed.

29. In spite of Plaintiff's dispute letter, TransUnion also failed to mark the Kia account or the repossession as disputed.

30. Plaintiff later applied for credit from Flagship Credit Acceptance LLC. By letter dated December 13, 2020, Flagship Credit Acceptance LLC denied Plaintiff's application based on information contained in a TransUnion credit report. In particular, the denial referenced a "delinquent or derogatory status" on Plaintiff's TransUnion credit report.

31. Plaintiff also applied for credit from Regional Acceptance Corp. By letter dated December 15, 2020, Regional Acceptance Corp. denied Plaintiff's application based on information contained in a TransUnion credit report. In particular, the denial referenced a "serious delinquency" on Plaintiff's TransUnion credit report.

**Experian's Inaccuracy**

32. Specifically as to Experian, in or around August 17, 2020 Plaintiff sent a dispute letter to Experian disputing the high balance on the Kia account and the purported repossession.

33. Plaintiff's dispute letter stated specifically that "the vehicle was never repossessed." Enclosed with the dispute letter was a copy of Plaintiff's complete car payment history as supplied by Kia and obtained from Kia's website. The Kia payment history showed Plaintiff had timely paid each and every monthly payment.

34. After receiving Plaintiff's dispute letter, Experian continued to report the Kia "Account Status" as "closed" with a "Balance" of $1,588 (over six times the installment payment amount). Further, the "Payment Status" stated simply, "Repossession."

35. All of these are obvious inaccuracies: (1) the account was open and in good standing, not closed as reported; (2) Plaintiff's balance should have reflected the installment amount, if at all; and (3) Plaintiff's vehicle was never repossessed.

36. Moreover, Experian's report is internally inconsistent. Experian's report on October 15, 2020 displays a payment "grid" showing on-time monthly payments for the Kia account up to and including August 2020. The Experian report also states the balance on the report was last updated on September 30, 2020. Therefore, Plaintiff's Kia account could not have accumulated a balance of $1,588 in under one months' time.

37. In spite of Plaintiff's dispute letter, Experian also failed to mark the Kia account or the repossession as disputed.

38. Plaintiff later applied for credit from Exeter Finance LLC. By letter dated December 11, 2020, Exeter Finance LLC denied Plaintiff's application based on information contained in an Experian credit report. In particular, the denial referenced a "serious delinquency" on Plaintiff's Experian credit report.

**Kia's Inaccuracy**

39. Finally, Kia was notified by Equifax of Plaintiff's dispute. In its September 21, 2020 letter to Plaintiff, Equifax stated: "In this situation:

- We request that the reporting company verify the accuracy of the information you disputed;
- We provide them with any relevant documents . . .
- We request that they send Equifax a response to your dispute and update their records and systems"

40. Upon information and belief, Experian and TransUnion also notified Kia of the dispute.

41. The receipt of Plaintiff's dispute from any of CRA Defendants triggered Kia's obligation to conduct an investigation, and remove the Kia account from Plaintiff's credit profile.

42. At the time of this dispute, Kia's own documents showed that Plaintiff had not missed a single timely monthly payment. Indeed, Plaintiff continued to make timely monthly payments and eventually, on January 13, 2021, Plaintiff obtained title of the vehicle.

43. On December 22, 2020 Plaintiff called Kia to inquire as to the repossession being reported by CRA Defendants in Plaintiff's credit reports.

44. Kia's representative confirmed that, to Kia's knowledge, Plaintiff's vehicle was not repossessed, was never repossessed, and was still in the possession of Plaintiff.

45. Kia's knowledge of the accurate status of Plaintiff's vehicle while all three national credit bureaus were reporting Plaintiff's vehicle as repossessed shows Kia's utter failure to undertake an even rudimentary investigation, let alone a reasonable investigation.

46. After Kia's had been notified of the dispute, all CRA Defendants continued to report the inaccurate repossession.

47. Upon information and belief, Kia failed to conduct a reasonable investigation and failed to notify CRA Defendants to correct its inaccuracy.

**Defendants Violated the FCRA and Harmed Plaintiff**

48. As a result of Defendant's conduct, Plaintiff has sustained actual damages including, but not limited to embarrassment, anguish, and emotional and mental pain.

49. Defendants' inaccurate reporting of the Kia account constantly reminded Plaintiff of the damage resulting from his stolen identity.

50. Plaintiff was denied credit as a result of Defendants' continued inaccurate reporting of the Kia account on Plaintiff's credit report.

51. Plaintiff has also suffered damages in the form of having reduced access to credit.

52. Plaintiff has also suffered actual damages because she is subjected to less favorable credit terms and interest rates based on Defendants conduct.

## CAUSES OF ACTION

### COUNT I

**Against CRA Defendants for Violations of the FCRA, 15 U.S.C. §1681 *et seq.***

53. Plaintiff incorporates the foregoing allegations as if set forth in full herein.

54. CRA Defendants violated 15 U.S.C. §1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning the Plaintiff.

55. CRA Defendants violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was accurate and record the current status of the disputed information or delete the item from Plaintiff's credit report.

56. CRA Defendants violated 15 U.S.C. §1681i(a)(2)(A) by failing to provide Defendant Kia all of the relevant information regarding Plaintiff and his dispute.

57. CRA Defendants violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file or correct the inaccurate information upon reinvestigation.

58. As a result of CRA Defendants' statutory violations, Plaintiff suffered actual damages as described above.

59. CRA Defendants' violations were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

60. In the alternative, CRA Defendants were negligent, which entitles the Plaintiff to recovery under 15 U.S.C. §1681o.

61. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT II

### Against Kia for Violations of the FCRA, 15 U.S.C. §1681s-2(b)

62. Plaintiff incorporates the foregoing allegations as if set forth in full herein.

63. At all times pertinent hereto, Defendant Kia was a "person" as that term is defined by 15 U.S.C. §1681a(b) and a "furnisher of information" to the credit reporting agencies.

64. Kia has a duty to provide accurate information to consumer reporting agencies, and to correct inaccurate information after receiving notice of a credit dispute directly from a consumer. *See* 15 U.S.C. §1681s-2(a).

65. Kia also has an obligation under 15 U.S.C. §1681s-2(b) to investigate after receiving notice of a credit dispute from a consumer reporting agency.

66. On at least three occasion within the past two years, Defendant Kia violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

67. The FCRA requires furnishers, such as Kia – after receiving notice from a credit reporting agency that a consumer disputes information that is being reported by that furnisher – to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

68. The receipt of Plaintiff's dispute from any of CRA Defendants triggered Kia's obligation to conduct an investigation, and remove the Kia account from Plaintiff's credit profile.

Yet it failed to properly investigate Plaintiff's dispute and failed to remove the account from Plaintiff's credit file.

69. Kia's conduct in this case is representative of its normal policies and procedures—responding to disputes by providing only a cursory review of basic information and failing to investigate any further or failing to investigate and remediate any errors entirely.

70. Kia's conduct violated §1681s-2(b) of the FCRA. Kia willfully and/or negligently violated these provisions of the FCRA in the following manner:

- By willfully and/or negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

- By willfully and/or negligently failing to review all relevant information concerning Plaintiff's account as provided;

- By willfully and/or negligently failing to report the results of its investigation of the inaccurate information to all credit reporting agencies;

- By willfully and/or negligently failing to modify or delete incomplete or inaccurate information in Plaintiff's file after conducting an investigation;

- By willfully and/or negligently failing to modify or delete inaccurate or incomplete information after conducting a reinvestigation;

- By willfully and/or negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. §1681s-2(b).

71. As a result of Kia's conduct, Plaintiff suffered damages, mental and emotional pain and anguish and the humiliation and embarrassment of the credit denials, reductions in lines of credit and reputation as a successful borrower.

72. Further, Plaintiff suffered actual damages including the time and money spent to obtain credit reports, to submit disputes to each credit bureau, and to speak with Kia about this issue.

73. Kia's conduct was both willful and reckless, and therefore it is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

74. In the alternative, their conduct was negligent, thereby entitling Plaintiff to recover under 15 U.S.C. §1681o.

75. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from the Defendants in an amount to be determined by the Court pursuant to §1681n and §1681o.

## JURY DEMAND

Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment be entered against Defendants, for the following:

A.  Declaratory judgment that Defendants violated the FCRA;

B.  Actual damages against Defendants pursuant to 15 U.S.C. §1681n(a);

C.  Statutory damages against Defendants pursuant to 15 U.S.C. §1681n(a)(1)(A);

D.  Punitive damages against Defendants pursuant to 15 U.S.C. §1681n(a)(2);

E.  Cost and reasonable attorneys' fees against the Defendants pursuant to 15 U.S.C. §§1681n(c) and 1681o(b);

F.  Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G.  For such other and further relief as the Court may deem just and proper.

|  |  |
|---|---|
| DATED:  February 4, 2021 | **COHEN & MIZRAHI LLP**<br>YOSEF STEINMETZ<br>Florida Bar No. 119968<br><br>/s/ Yosef Steinmetz<br>YOSEF STEINMETZ<br>300 Cadman Plaza West, 12th Floor<br>Brooklyn, NY  11201<br>Telephone:  929/575-4175<br>929/575-4195 (fax)<br>yosef@cml.legal |